UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEANETTE FOXWORTH, | :<br>:<br>: CIVIL ACTION NO. 3:08cv813(VLB)<br>:<br>v.               : JULY 25, 2011<br>:<br>UNITED STATES OF AMERICA    :<br>: |

## MEMORANDUM OF DECISION DENYING PETITIONER'S [DOC. #27] MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

Petitioner, Jeanette Foxworth ("Foxworth"), proceeding *pro se,* brings this petition for habeas relief pursuant to 28 U.S.C. § 2255 asserting numerous challenges to her conviction for conspiracy and wire fraud scheme to obtain contracts from the City of Bridgeport and State of Connecticut and for making false statements including a claim for ineffective assistance of counsel. For the following reasons, Foxworth's motion to vacate her sentence is denied without prejudice to filing a new motion to vacate with respect to Foxworth's ineffective assistance of counsel claims in accordance with this Court's Order.

### Background and Facts

On April 3, 2008, Foxworth was convicted by a jury on all counts of an indictment charging her with a conspiracy and wire fraud scheme to obtain contracts from the City of Bridgeport and the State of Connecticut in exchange for bribes to former State Senator Ernest Newton (counts one through six) and for making false statements to special agents of the FBI (counts seven through nine). Foxworth was sentenced on November 7, 2007 to 15 months' imprisonment on

each count, to be served concurrently, followed by two years of supervised release.  Foxworth was represented at trial by two experienced criminal attorneys, Andrew Bowman, Esq. and Joseph Moniz, Esq.

On December 10, 2007, Foxworth took a direct appeal of her conviction and sentence to the Second Circuit.  At the appeal, Foxworth was represented by Attorney Bowman.   While her appeal was pending at the Second Circuit, Foxworth filed her first motion to vacate pursuant 28 U.S.C. § 2255 on May 28, 2008.  On March 19, 2009, the Court denied Foxworth's motion as premature in light of the pending Second Circuit appeal and without prejudice to renewal after the direct appeal was final.  On June 8, 2008, the Second Circuit rendered its decision affirming the judgment of the district court.  On July 20, 2009, Foxworth renewed her motion to vacate before this Court.

The Government provided the following facts regarding their case against Foxworth that were presented at trial in the Government's response to Foxworth's initial petition.  [Doc. #7].   Foxworth moved to Bridgeport from New Orleans with her ex-husband Anthony Elliot and had a relationship with then Connecticut State Senator Ernest Newton.  The Government alleged that Foxworth paid Newton a total of $3,000 through a series of bribes.  The object of the bribes was to get Newton's help in steering government contacts to Foxworth's business.  The first of these contracts was associated with a $3 million grant to the Charles Smith Foundation ("CSF").  Connecticut was awarding the CSF the grant to help the CSF in its efforts to revitalize the city of Bridgeport.  Foxworth wished to get a $100,000 contract from the CSF, and to that

2

end she enlisted the help of Newton. Newton, on behalf of Foxworth, told the CSF that if they wanted the grant, they would have to work through him. Newton promised Foxworth that if the CSF did not agree to give her the $100,000 contract, he would interfere with the CSF's efforts to obtain the grant.

In addition, the Government alleged that Foxworth worked with Newton to obtain an audit and website contract from the Bridgeport School System. After Foxworth failed to get the school contract through her own efforts, she asked Newton to intervene. He promised her that he would use his office of State Senator to "stop that [expletive deleted] education money so [expletive deleted] fast" if the superintendent ignored his calls. He also agreed to find out what companies the superintendent was considering for the audit contract, and then assured Foxworth he would use his official Connecticut General Assembly stationary to contact those companies and advocate that they use Foxworth's services. The Government alleges Foxworth obtained these favors from then State Senator Newton by paying him $3,000. Furthermore, the Government asserts that Foxworth tried to conceal her bribery by writing him checks payable to cash or a close member of his family instead of to him directly. Neither party disclosed their relationship as required by law and policy.

The five wire fraud counts upon which Foxworth was convicted arose from five separate phone calls between her and Newton during which they discussed the conspiracy. In her first call on June 9, 2004, Newton and Foxworth discussed the grant for the CSF. Newton told Foxworth that the CSF would not receive the $3 million grant without Foxworth getting a $100,000 contract. The second call

was on the same day, during which Newton again promised Foxworth he would stop the grant if the CSF did not give her the contract. In the third call, Foxworth solicited Newton's help in getting a contract with the Bridgeport schools. The fourth and fifth calls were also about the Bridgeport schools contract. During these calls, Newton promised to use his office as State Senator and his stationary to get the businesses bidding on the audit contract to use Foxworth's services. These phone calls were all recorded by the FBI as part of a wiretap employed during a corruption investigation. During this investigation, the FBI also questioned Foxworth directly. Agents asked her about her relationship with Newton and the nature of the payments between Newton and herself. Foxworth falsely claimed the payments were donations to Newton's campaign. She also lied about the nature of a $500 payment from Newton to Foxworth's husband. These statements were the subject of counts 7 to 9 of the indictment and Foxworth was convicted at trial on each of these three false statement counts.

### Discussion

Habeas review is an extraordinary remedy that cannot substitute for an appeal, *Bousley v. United States*, 523 U.S. 614, 621 (1998), and may not be employed to relitigate issues that were raised and considered on direct appeal. *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992). Claims that have been decided on direct appeal may not be raised again in a § 2255 petition unless there is an intervening change in the law that would have affected the outcome. *Sanin v. United States*, 252 F.3d 79, 83 (2d Cir. 2001). And claims that could have been, but were not, raised on direct appeal are procedurally barred, and can only be

4

asserted in a § 2255 petition if the petitioner shows cause for the procedural default and actual prejudice, or actual innocence. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). The only exception to this rule is a claim for ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 504 (2003). But in that regard, ineffective assistance claims based on alleged errors that have been rejected on the merits on direct appeal are precluded from consideration in a § 2255 proceeding. *Riascos-Prado v. United States*, 66 F.3d 30, 33-35 (2d Cir. 1995). Accordingly, all the claims Foxworth asserts in her habeas petition are procedurally barred as they could have been raised on her appeal but were not except for Foxworth's Ineffective assistance of counsel claim. Therefore, the sole claim that the Court may consider on Foxworth's 28 U.S.C. § 2255 petition is her claim that she received ineffective assistance of counsel in violation of her Sixth Amendment rights.

Claims for ineffective assistance of counsel are analyzed under the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a defendant must establish (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that his counsel's unprofessional errors actually prejudiced the defense. *Id.* at 687-88. In determining whether counsel's performance was objectively reasonable, this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Second,

5

the defendant must demonstrate "that he was prejudiced by counsel's deficient acts or omissions." *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (citing Strickland, 466 U.S. at 687-90). In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and that the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. Moreover, "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (*quoting Strickland*, 466 U.S. at 696-97) (internal citations omitted). To prevail, a petitioner must demonstrate both deficient performance and actual prejudice.

In the culmination of her petition, Foxworth specifies that she was denied effective assistance of counsel in the following ways: (1) "little to no objections or validation of the prosecution suppositions"; (2) "failure to examine key witnesses, i.e. Charles Smith, Henry Webb, Loretta Williams, Ed Gomes, Trude Mero"; (3) "failed to present key evidence (tape conversations)"; (4) "failed to prepare by understanding the nature of the defendant's purpose – business marketing / lobbying"; (5) "removal of key evidence, for example, 'bait-n-trap' scenarios – 'obstruction of justice'" (6) "failed to present adequate facts in opening and closing arguments for example potential counts inaccuracies"; and (7) prohibited defendant's right to effective trial when defense counsel stated two

days before trial, that they would not be "defending the tape conversations" and by refusing to answer Foxworth's question regarding "what was their strategy in defending prosecution's theory." [Doc. # 27 at 26].

In her petition, Foxworth has described these alleged errors of counsel. However, Foxworth has not satisfied her burden by demonstrating that her counsel's performance fell below an objective standard of reasonableness or that these purported errors or deficiencies could not be considered sound trial strategy. Moreover, Foxworth has not demonstrated that such errors or deficiencies caused actual prejudice such that there was a reasonable probability that, but for these errors, the results of the proceeding would have been different. Therefore, it is essential in demonstrating actual prejudice to specify how in the absence of such error the jury would have found her innocent and not guilty in connection with each specific count. In order to show prejudice, Foxworth needs to provide the Court with an assessment of all evidence in the record including the evidence that supported the Government's case against her as well exculpatory evidence that supported her case and provide the Court with an explanation on how the counsel's error was so substantial that the evidence supporting the Government's case would have no longer been persuasive to the jury.

Courts routinely hold that where "allegations with regard to alleged counsel's errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,'" ineffective assistance of counsel claims cannot be

7

established. *Vasquez v. United States*, 1997 WL 148812, at *12 (S.D.N.Y. Mar. 28, 1997); *see also Davison v. United States*, 2001 WL 883122 at *8 [] ("[B]lanket assertions against his trial counsel's performance in a self-serving affidavit," in the absence of objective evidence to support petitioner's claim, were insufficient). Therefore, it is important that Foxworth provide the Court with relevant excerpts of the trial transcript, and copies of the various tapes and other evidence that she relies on or refers to in asserting her claim for ineffective assistance of counsel.

In order for Foxworth to state a viable claim for ineffective assistance of counsel in connection with her allegation that her attorneys failed to object or validate prosecution suppositions, she needs to identify the specific content of the objection counsel should have made and cite to the relevant portion of the trial transcript pointing out exactly when counsel should have made that objection. In addition, Foxworth needs to demonstrate that the objection would have been proper and that the court would have sustained that objection. Courts have found that where objection by trial counsel would have been fruitless, "the failure to so object is not evidence of ineffective assistance of counsel." *Duncan v. Griener*, No. 97cv.8754, 1999 WL 20890, at *11 (S.D.N.Y. Jan. 19, 1999). Moreover, Foxworth must explain how the results of the trial would have been different if the objection had been properly made and sustained. *See Brown v. Walker*, 275 F. Supp. 2d 343, 351 (E.D.N.Y. 2003) (finding "[t]here is no reasonable probability that the result of petitioner's trial would have been different even if all of the contested hearsay testimony had been deemed inadmissible by the trial court upon an objection from defense counsel."); *Robinson v. Graham*, 671 F.

Supp. 2d 338, 351-352 (N.D.N.Y. 2009) (concluding that counsel's failure to object to hearsay testimony was a matter of reasonable trial strategy and that failure to object did not prejudice petitioner).

In order for Foxworth to state a viable claim for ineffective assistance of counsel in connection with her allegation that her attorneys failed to call the key witnesses of Charles Smith, Henry Webb, Loretta Williams, Ed Gomes, and Trude Mero, she needs to identify the specific witnesses and describe in detail the testimony they might have given. *See Castillo v. U.S.*, Nos. 08civ 3401, 03 Cr. 979, 2009 WL 4250512, at *4 (S.D.N.Y. Nov. 30, 2009); *Lee v. Cully*, No. 09cv6502, 2011 WL 1793174, at *3 (W.D.N.Y. May 10, 2011) (finding that "the claims pertaining to the uncalled 'witnesses' are based only on [movant's] unsubstantiated allegations which are based upon mere speculation, unsupported by any affidavits from these witnesses. [Movant] has thus failed to demonstrate how his defense would have benefitted from the calling of these individuals in his defense by his counsel."). "To demonstrate prejudice from counsel's alleged failure to call a witness, the petitioner must at least demonstrate that the witness was able to testify and would have testified in a manner beneficial to the petitioner." *Ferrell v. U.S.*, No.08civ8245, 2011 WL 1496339, at *4 (S.D.N.Y. April 20, 2011).

Foxworth also needs to demonstrate that the decision to not call those witnesses was not part of her attorneys' general trial strategy. *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) ("The decision not to call a particular witness is typically a question of trial strategy") (internal quotation marks and citation omitted); *Grant v. Ricks*, 151 Fed.Appx. 44, 45 (2d Cir. 2005) (Counsel's decision

9

as to "whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation.") (*quoting United States v. Best*, 219 F.3d 192, 201-02 (2d Cir. 2000)); *United States v. Smith*, 198 F.3d 377, 384 (2d Cir. 1999) ("[t]he decision whether to call any witnesses on behalf of defendants, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.") (internal quotation marks and citation omitted). Lastly, Foxworth needs to demonstrate that had these individuals been called as witnesses the likely outcome of the proceeding would have been different. *Hales v. U.S.*, No.08civ6547, 2010 WL 3156042, at *5 (S.D.N.Y 2010) (finding that defense counsel's failure to call movant's brother even though counsel had previously requested brother to testify and after brother had waited outside the courtroom prepared to testify was not ineffective assistance of counsel as movant had not shown "how the witness's testimony would have proven beneficial to her defense"). Petitioner needs to explain how such testimony would have proven beneficial to her defense such that a rational factfinder would not have found her guilty.

Foxworth alleges that her attorneys failed to provide evidence regarding "bait-n-trap scenarios." It appears from liberally construing Foxworth's petition that she is claiming that her counsel failed to present an entrapment defense on her behalf. In particular, Foxworth alleges that "it is not inconceivable to envision 'bait-n-trap' actions orchestrated by the FBI as a clear violation of the defendant's Fifth Amendment's rights which are direct ground for acquittal. The government

10

on several occasions February - October, 2004, through the cooperation of a witness (CW), Sam Pierpont, at the behest of the FBI agents, attempted to entice / induce the defendant to accept a 2.5 million dollar grant project offer as a means to prove their theory of corruption."  In order to establish a viable claim for ineffective assistance of counsel in connection with a failure to present an entrapment defense, Foxworth needs to demonstrate that the choice not to present an entrapment defense was not part of sound trial strategy.  She further needs to demonstrate that she would be entitled to an entrapment defense.  In addition, she must further demonstrate that the evidence Counsel should have introduced to prove her entrapment defense would have been so persuasive that it would have changed the results of the proceeding such that the jury would not have found her guilty in connection with each count.

In connection with the choice of a defense strategy, courts typically apply a very strong presumption that a counsel's conduct falls within the range of reasonable professional assistance.  *U.S. v. Balis*, Nos. 08civ5637, 03cr1028, 2009 WL 1117274, at *5 (S.D.N.Y. April 24, 2009) (noting that "[t]he choice of a defense strategy at trial is one of the 'virtually unchallengeable' tactical decisions left to the judgment of defense counsel.").  This presumption is applied even more so in connection with claims relating to the failure to raise an entrapment defense.  *Aluear-Rodriguez v. U.S.*, No.95civ2381, 1996 WL 67939, at *2 (S.D.N.Y. Feb. 15, 1996) ("An attorney is not required to argue each and every potential defense.  This is especially true with regard to the entrapment defense, which could materially harm the interests of the defendant and has a small likelihood of

11

success at trial. Therefore, the failure to raise the entrapment defense is not, by itself, ineffective assistance of counsel.") (citations omitted); *Balis*, 2009 WL 1117274, at **5-6 ("[E]ven if the Court were prepared to second-guess counsel's decision not to present an entrapment defense, the reasons why counsel chose not to present this notoriously difficult defense are obvious to anyone with a passing familiarity with criminal trials. In order to prevail on an entrapment defense, a defendant must not only show that he was induced by Government agents to engage in criminal conduct, but must also defeat the Government's efforts to demonstrate that he was predisposed to commit the crime. The Government may show predisposition, among other things, by evidence that the defendant responded readily to the inducement, and by evidence of an existing course of criminal conduct similar to the crime for which he is charged. Moreover, while entrapment may be argued in the alternative, the defense in effect admits that the defendant engaged in criminal conduct, and attempts to explain away the commission of criminal acts. Defense counsel tend to shy away from alternative arguments that dilute the force of a denial of wrongdoing.") (internal quotation marks and citations omitted).

Foxworth next alleges that her counsel "failed to present key evidence (tape conversations)" and in her petition Foxworth discusses in detail one taped conversation with Sam Pierpont which she alleges provides exculpatory evidence. In particular, Foxworth asserts that this particular tape should have been introduced into evidence as in that tape "Defendant fully explains her purpose for being at the meeting … she stated very clearly her purpose 1.) Her

deceased husband asked her to obtain work closer to him 2.) She wasn't there to sell, nor was she there for the money but the principle of honoring someone's (deceased husband) request." [Doc. #27 at 4]. In order to state a viable claim for ineffective assistance of counsel in connection with her allegation that her attorneys failed to introduce the Pierpont tape, Foxworth needs to demonstrate that the choice not to introduce the tape was not a part of sound trial strategy and demonstrate that such failure fell below an objective standard of reasonableness on behalf of her attorneys' performance. Foxworth also needs to demonstrate that the evidence provided in the tape would have so significantly altered the record of evidence before the jury that a rational factfinder would have decided differently. *See Roach v. Conway*, No.04cv6500, 2009 WL 4572730, at *7 (W.D.N.Y. Dec. 7, 2009) (movant was unable to establish ineffective assistance of counsel based on his counsel's failure to present telephone records and time sheets as the other evidence in the record including video and audio tapes "was overwhelming and there was no probability that had defense counsel presented the time sheets and telephone records at trial that the verdict would have been different.").

Foxworth also argues that her attorneys "failed to prepare by understanding the nature of Defendant's purpose." Foxworth discusses in her petition that her purpose at various meetings was to "directly market her company's products and services" and engage in a "marketing process." [Doc. #27 at 21]. However in order to state a viable claim for ineffective assistance of counsel, Foxworth needs to identify a particular action her attorneys should have

taken at the trial or evidence that her attorneys should have introduced at the trial with regard to nature of her purpose and explain exactly how such action or evidence would have altered the outcome of the trial. She also needs to demonstrate that her attorneys' failure to prepare by understanding the nature of her purpose fell below an objective standard of reasonableness on behalf of her attorney's performance. In addition, Foxworth must show that her attorneys' failure to present the nature of her purpose was not a part of a sound trial strategy.

Foxworth also alleges that her attorneys "failed to present adequate facts in opening and closing argument for example regarding count inaccuracies." [Doc. #27[. Again, Foxworth must demonstrate that her attorneys' failure to include such facts was not a part of a sound trial strategy and that the failure to present such facts fell below an objective standard of reasonableness. Further, she must demonstrate that inclusion of such facts in her attorneys' opening and closing statements would have overcome the evidence the government presented against her such that it would have altered the outcome of the trial.

Lastly, Foxworth alleges that she was deprived of an effective trial when her attorneys did not defend the tape conversations, told her it was her obligation to defend the tapes and refused to tell her what their strategy in defending the prosecution's theory. In order for the Court to assess Foxworth's claims in the first instance, Foxworth needs to identify and fully describe the tapes at issue that her attorneys failed to defend against and demonstrate that during the trial her attorneys took no action whatsoever in connection with the introduction of

14

those tapes into evidence. In addition, Foxworth must also demonstrate that the failure to defend the tapes was not a part of a sound trial strategy and that the failure to defend such tapes fell below an objective standard of reasonableness. Further, she must demonstrate that had she had competent counsel they would have been able to successfully defend against the tapes such that it would have altered the outcome of the trial.

Lastly, Foxworth alleges that her attorneys failed to communicate with her their trial strategy. However in order to prevail on such a claim, Foxworth needs to specifically identify how her attorneys' failure to communicate with her deprived her of her right to assist in her defense and how that failure altered the outcome of the trial.

### Conclusion

Based upon the above reasoning, Foxworth's [Doc. #27] motion to vacate her sentence pursuant to 28 U.S.C. § 2255 is denied without prejudice to Foxworth filing a new motion to vacate with respect to her ineffective assistance of counsel claims in accordance with this Court's Order by September 1, 2011, which deadline will only be extended for good cause shown by Foxworth.

                                                      IT IS SO ORDERED.

                                                      _____/s/_____

                                                      Hon. Vanessa L. Bryant
                                                      United States District Judge

**Dated at Hartford, Connecticut: July 25, 2011**